FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
5/20/2020
JEFFREY P. COLWELL, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
AT DENVER

DOUGLAS MORRILL PEEK,

    Petitioner,

V.

UNITED STATES OF AMERICA,

    Respondent

Case No. 07-CR-00064-LTB-01
JUDGE BABCOCK

EMERGENCY MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 USC § 3582(c)(1)(A)

Douglas Morrill Peek, pro se
Reg. No. 34757-013
FCC Coleman Low
P.O. Box 1031
Coleman, Florida 33521-1031

# INTRODUCTION

Petitioner Douglas M. Peek asks the court to grant his request to amend his sentence to time served. The request is in response to the "extraordinary and compelling reasons" outlined below regarding the unabated and advancing COVID-19 virus spreading at FCC Coleman Low where Douglas is being incarcerated.

# DISCUSSION

In December 2018, President Trump signed the First Step Act into law. The First Step Act allows inmates the right to petition the courts directly for compassionate release under Title 18 of the United States Code Section 3582(c)(1). Subsection A reads

> "[T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by a warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that
>
> (i) extraordinary and compelling reasons warrant such a reduction

-- 1 --

1). See Crowe v. United States, 430 F. Appx. 484, 485 (6th Cir. 2011) (The Court determined that the statute did not define or place any limitation on what "extraordinary and compelling reasons" might warrant for such a reduction.)

page 1

and that such a reduction is consistent with applicable policy statements

--2--

issued by the Sentencing Commission.

As stated, subsection (a)(1) reads that "[e]xtraordinary and compelling reasons warrant such a reduction." That subsection, however, is not further defined or explained. The applicable sentencing commission guideline, USSG 1B1.13, has not been updated to provide further guidance. This means inmates are able to receive relief by directly petitioning the court under section 3582(c)(1)(A).

2). In United States v. Cantu, Case No. 1:05-CR-458-1, 2019 WL 2498923 (S.D. Tex., June 17, 2019), Cantu pled guilty to one count of Racketeering and was originally sentenced to 290 months in prison. He sought release under 18 USC 3582, asking for a reduction in sentence to time served. The court examined USSG 1B1.13 to determine what the sentencing commission considers "[e]xtraordinary and compelling." While Cantu had not presented evidence about why his reasons were extraordinary and compelling, the court determined that they had the power to make that determination. This was in part because the First Step Act's enactment meant that the policy statement (USSG 1B1.13) no longer applicable to the statute and meant that policy statement did not provide guidance on the appropriate use of sentence-modification provisions under 3582. The Court also relied on the Rule of Lenity, which in this situation mandates that "[w]hen two rational readings of a statute are possible, the one that treats the defendant less harshly prevails," citing McNally v. United States, 483 U.S. 350, 359-60 (1987).

## EXTRAORDINARY AND COMPELLING REASONS

Courts have found two distinct circumstances that can be considered to amend the sentence under 3582(c)(1)(A). One of those circumstances took the incarcerated person's sentence into account. Courts determined that a combination of factors including the defendant's age at the time of sentence (Douglas was 53 and is now 66) and the length of sentence imposed (210 months). See e.g., United States v. Cantu-Rivera, 1:05-CR-458-1, 2019 WL 2498923 at *2 (S.D. Tex., June 17, 2019); United States v. Brown, 4:05-CR-00227-1, 2019 WL 4942051 at *3 (S.D. Iowa, Oct. 8, 2019); United States v. Urkevich, 8:03-CR-37, 2019 WL 6037391 (D.C. Neb., Nov. 14, 2019).

The second circumstance that presents "[e]xtraordinary and compelling reasons" relates to President Trump's Declaration of a National Emergency Order amid the coronavirus ("COVID-19") pandemic. Attorney General William Barr acknowledged in his March 26, 2020 memo to staff that when Congress passed the CARES Act it defined what a "[c]overed emergency period"

meant regarding the applications for compassionate release. He stated the "[c]overed emergency period" began when President Trump declared a national emergency and ends 30 days after he declares the emergency has ended. See CARES Act H.R. 748 (signed into law March 27, 2020).

The Bureau of Prisons has established criteria associated with requests made under compassionate release:

1). "The inmate has no detainer;"

~~*****~~ Douglas has no detainer. See exhibit A, Inmate Reentry Plan

2). "Mental health care level is less than IV;"

~~*****~~ Douglas's mental health care level is 1. Id at 2.

3). "PATTERN score is minimum;"

~~*****~~ Douglas's PATTERN score is minimum. Id at 6.

4). "BRAVO (BOP's existing risk evaluation tool) is low of minimum;"

~~*****~~ Douglas's BRAVO scoring is minimum. Id at 4.

5). "No Incident Report within the past 12 months;" and

~~*****~~ Douglas has had no incident report within the past 12 months. Id at 1

6). "Must have completed 50 per cent of the inmate's sentence."

~~xxxxx~~ Douglas has completed 75 per cent of his sentence. (158 months completed out of 210)

## CURRENT MEDICAL STATUS

A second factor is Douglas's health. Amoung other ailments, Douglas has a history of hypertension and elevated cholesteral. The Center for Disease Control ("CDC") reported on April 3rd, 2020, a strong correlation between hypertension and COVID-19 hospitalizations and deaths. The CDC had previously reported that the most vulnerable to contract COVID-19 are those people over age 65 (Douglas is 66) and people with conditions that affect their lungs, heart, kidney, or immune system. --3--

A request has been made with the medical records department for documentation, they have not responded. See Exhibit B at 1. Despite request for medical records, ~~Douglas~~ can offer proof in the form of labels from his current prescription bottles. See Id at 2.

3). See Center for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19); People at risk. See https://www.cdc.gov

## Medical Needs Not Currently Being Met

Douglas has suffered multiple upper respiratory tract infections from the "common cold". He has gone to sick call when sick call has been announced (there is no sick call on Weekends or on Wednesdays or if there is fog or some security issue). Douglas went to sick call in early April. He fully completed the Sick Call form as required and was told he would be placed on "Call Out" to be seen with regard to the medical complaint. He is never seen at the time he fills out the Sick Call form. He has not been placed on call out. Douglas went to sick call two other times in early April for other ailments, he filled out the forms, was not seen at those times, told to watch the call out list and has not been called to medical. There have been occasions where it was months before Douglas was called out and occasions where he was never called out.

    Based on these similar factors, courts have found cause to grant request for compassionate release. See e.g., United States v. Jepsen, No. 3:19-cv-00073(VLB), 2020 WL 1640232 (D. Conn., Apr. 1, 2020)("[M]r Jensen is in the unique position, he is immune comprised

page 6

and suffers from multiple chronic conditions that are in flux and predispose him to potentially lethal complications if he contracts COVID-19. The court finds that the totality of the circumstances specific to Mr. Jepsen constitute 'extraordinary and compelling reasons to grant compassionate release."); United States v. Williams, No. 3:04-CR-95 (MCR)(N.D. Fla., Apr. 1, 2020)("[W]illiams cardiovascular condition comprimises his immune system, which, taken with the advanced age, put him at significant risk for even more severe and life threatening illness should he be exposed to COVID-19 while incarcerated... Based on these facts, the Court finds that Williams deterioration in physical health is sufficiently serious to satisfy the medical criteria for a reduction in sentence.") United States v. Resnik, No. 1:12-CR-00152-CM (S.D.NY., Apr. 2, 2020)("[R]eleasing a prisoner who is for all practical purposes deserving of compassionate release during normal times is all but mandated in the age of COVID-19."); United States v. Brennan, No. 4:15-CR-80-01 (S.D. Tex. Apr. 2, 2020)("[T]hough not

reflected in order, emergency motion was granted the same day of filing of prisoner who had served only 9 months of a 36-month sentence for fraud and had not exhausted BOP remedies."); United States v. Colvin, No. 3:19-CR-179 (JBA), 2020 WL 1613943 (D. Conn., Apr. 2, 2020)("[S]he has serious medical condition, which substantially increases her risk of severe illness if she does contract COVID-19... Defendant is 'unable to provide self care within the environment of FDC Philadelphia in light of ongoing COVID-19 pandemic because she is unable to practice effective social distancing and hygenic to minimize her risk of exposure, and if she did develop complications, she would be unable to access her team of doctors at Bridgeport Hospital. In light of the expectation that the COVID-19 pandemic will continue to grow and spread over the next several weeks, the Court concludes that the risks faced by defendant will be minimized by her immediate release to home, where she will quarantine herself."); and United States v. Foster, No. 1:14-CR-324-02 (M.D. Pa. Apr. 3, 2020)("[T]he

page 8

circumstances faced by our prison system during this highly contagious, potentially fatal global pandemic are unprecedented. It is no stretch to call this environment 'extraordinary and compelling,' and we well believe that, should we not reduce Defendant's sentence, Defendant has a high likelihood of contracting COVID-19 from which he would "not be expected to recover." USSG 1B1.13. No rationale is more compelling or extraordinary.")

## IMPECCABLE CONDUCT IN PRISON

Douglas has served over 13 years of incarceration (158 months). Douglas has worked at Federal Prison Industries in UNICOR in various positions for nine and a half years. He is currently the lead receiving clerk. See Exhibit A at 1.

During his incarceration, Douglas has taken numerous classes to include both ACE (Adult Continuing Education) and vocational education, he completed a culinary arts program. He was an ACE instructor for three years teaching an introductory course

page 9

in German language and culture, having learned the basics himself during his incarceration. He has participated in the art program for 11 years having learned to paint.

Douglas used his incarceration as a time to strengthen his faith. He has been a regular participant in the prison church and is currently an usher. He has taken several faith based classes to include having gone through the 12 step faith based recovery program "Celebrate Recovery" twice. He also twice took the faith based "Conqueror Series" class, a Christian faith class on dealing with recovery from addiction to pornography. See Exhibit C1-9.

Douglas has maintained clear conduct, receiving no incident reports, throughout his incarceration. These facts support Douglas's efforts to rehabilitate himself and should be considered under the 3553A factors to grant requests for time served.

In United States v. Pepper, 562 U.S. 476 (2011)(citing Wasman v. United States, 468 U.S. 559, 572 (1984), for example, the Court applied a downward variance for Pepper's post-conviction rehabilitation efforts.

# REENTRY PLAN

Currently Douglas does not have a release address. Were he released to halfway house for two to three months Douglas would secure a release address. Alternatively, based on a probation officers guidance, Douglas would reside in an apartment, rental home or duplex, or other extended stay facility. Douglas's brother or sister-in-law, Larry or Sara Peek, would meet Douglas at the airport and transport him to said residence. Douglas has the financial means to support himself. He retired from his former employment prior to his incarceration and monthly pension payments have been deposited into his IRA ever since. Additionally, he has other funds available from investments and, at age 66, he is eligible for his full social security benefit as he has the requisite required quarter hours. He is also eligible for medicare plan "D" which would meet his medical and perscription needs. Douglas agrees to self-quarantine for a 14 day period upon release. He has familial support

for both emotional and other material needs.

## EXHAUSTION OF REMEDY

On February 3, 2020 Douglas filed a reduction of sentence application and memorandum with his case manager, it was denied. See Exhibit D at 1-8. Douglas filed a follow up request with the warden, Kathy P. Lane, on March 17, 2020. Warden Lane denied the request on April 3, 2020. Id 9-14. More than 30 days have passed since Douglas made his request, as such this motion would be both timely and ripe for the courts consideration.

## CARES ACT CHANGES LAW

There have been substantative changes to the law since President Trump signed the CARES ACT into law in March 2020. Whereas Douglas may have been barred from relief before due to his conviction of a sex offense, this has now changed. See United States v. Sawicz, 08-CR-287 (ARR)(E.D.N.Y. Apr. 10, 2020). Sawicz was charged with counts pertaining to child pornography. He pled guilty to those charges in the past. He was indicted

page 12.

with another child pornography charge as well as a violation of supervised release for the first case. In August of 2016 the court sentenced Sawicz to five years of imprisonment for a violation of supervised release. Sawicz was imprisoned at Danbury. Sawicz indicated that he received approval from his unit manager to transfer to a halfway house and that probation had approved his parent's home in Deer Park, N.Y. for his reentry. He also indicated that the BOP's residential reentry office was still processing his reentry application.

 On April 5, 2020 he submitted a letter to the warden of Danbury requesting home confinement and citing the CARES ACT. On April 9, 2020, he submitted a letter to the warden of Danbury seeking compassionate release pursuant to the FIRST STEP ACT. He cited hypertension and indicated that he takes baby asprin. As of the filing of this order he had not received a response on either.

page 13

Here the court determined that the COVID-19 outbreak at FCI Danbury combined with Sawicz's risk of suffering severe complications because of his hypertension justify waiver. "The delay that the defendant would experience if he had to wait for 30 days to expire before pursuing a motion for compassionate release in this court would put him at significant risk of suffering catastrophic health consequences." The court also stated that extraordinary and compelling reasons warranted Sawicz's release here by way of COVID-19 pandemic combined with Sawicz's particular vulnerability to complications from COVID-19 because of his hypertension.

The court then evaluated the 3553(a) factors to determine whether to grant a reduction of sentence here. The court acknowledged that this was a serious charge and that Sawicz had already violated one term of supervised release. However, that "do[es] not justify keeping the defendant in prison amidst an outbreak of a potentially deadly virus to which he is

particularly vulnerable." The court also noted that Sawicz is five months away from being eligible for home confinement under normal circumstances.

Finally, the court evaluated whether Sawicz was a danger to the safety of any other person or the community. The court noted that when Sawicz is released he will quarantine himself at home with his parents for 14 days and that in doing so he would pose little, if any, risk to the public. The court went on to note that the violation that Sawicz was serving his sentence on did not involve violence or physical contact.

As to Douglas's case, the court record supports that there were no allegations of, charges filed for, or convictions pertaining to either violence or physical contact and he had no prior criminal history. Typically Douglas's case manager submits inmates for up to 12 months of halfway house when they are 18 months from completion of sentence. Douglas is approximately 20 months from completion of his sentence. Also, during April 2020, Douglas's

page 15

case manager confirmed, when asked by Douglas, that the COVID-19 virus was present on the Coleman Low compound but he would not provide details. Sawicz's compassionate release motion was granted and his sentence reduced to time served. He was ordered to be immediately released upon receipt of this order (as opposed to 14 days in quarantine in Danbury) and was sentenced to home confinement that included home incarceration to be enforced by location monitoring. United States v. Sawicz, 08-CR-287 (ARR)(E.D.N.Y. Apr. 10, 2020). Douglas seeks similar relief by the court.

## CONCLUSION

Thus, in this emergency and urgent request for modification of sentence to time served, based on the facts set forth above and because of the extraordinary and compelling circumstances surrounding the COVID-19 pandemic now advancing at Coleman Low, Douglas respectfully requests the court GRANT his motion.

page 16

Dated: 05/14/2020

*Douglas M. Peek*, pro se
Reg. No. 34757-013
FCC Coleman Low
P.O. Box 1031
Coleman, Florida 33521-1031

## DECLARATION

I, Douglas Morrill Peek, having read the above Motion for Reduction of Sentence to Time Served certify that the facts as stated are true and correct to my own personal knowledge of those facts and events and is made freely under pains and penalties of perjury on this _____ day of _____, 2020

Dated: 05/14/2020

*Douglas M. Peek*, pro se

## CERTIFICATE OF SERVICE AND COMPLIANCE

I, Douglas Morrill Peek, hereby certify that a true and correct original was presented to prison authorities for forwarding on this the _____ day of _____, 2020 with first-class postage addressed to the United States District Court's Clerk Office for filing. All parties of record will receive notice of the filing through the Court's ECF database and may retrieve a true and correct copy at their convenience.

The nation is currently under a stay at home order with the Federal prison system in total lockdown. There is no access to typewriters or word processors at this time. For those extraordinary circumstances, petioner requests the Court excuse any default in preparing this filing in accordance to any Rules or Local Rules of the Court.

Dated: 05/14/2020

*Douglas M. Peek*, pro se

page 17